May it please the court, my name is Josh Howard and I represent Sherwin Archie in this appeal. Mr. Archie asks that you vacate the sentence imposed by the district court and remand that matter for resentencing for two different infirmities. First, to remand it for resentencing without the application of an armed career criminal act enhancement, as well as without the enhancement for brandishing under Title 18, Section 924C that was not charged in his indictment and violates the Supreme Court's recent opinion in Alain. If I may start, Your Honors, with our argument to vacate the finding that he was an armed career criminal. We argue that because the government did not carry its burden to prove a third predicate conviction by a preponderance of the evidence and it was clear error for the lower court to decide it on the documents that it used. As you will see in the record, there is a mishmash of several old documents from the 70s in New York State, none of which were actually judgments and the probation office which carried the burden here, well the government has the burden to prove it by preponderance of the evidence, but the probation office which really did the laboring work here to try to establish that criminal history noted and admitted in the process that the documents they had were flawed and were from disorganized sources. The record reflects a quote more specifically or more accurately than I can relay here, but it says effectively, due only to the age of the offense and the disorganization of the New York archives are we unable to nail down the exact date of conviction. And the ultimately it led the district judge to a dilemma where he could not name that date of conviction, but only give a rough year that he felt was relevant. And as I'll argue in a moment, we believe the law requires more than that. Your Honor, part of the things the district court relied upon were never made a record of this record, not by the prosecution who didn't respond to the pre-sentence report objections in writing, who didn't respond to our sentencing brief, which had many of these exhibits that are now before you in the panel. Similarly, the probation office, who again carried the laboring ore here, failed to make a record of what they were offering to the court. And they also never shared that with the defense in advance. The transcript is clear that for the first time we saw whatever they were offering to the court in the courtroom itself due to some eastern district of North Carolina policy and practice. That advanced review and critique and opportunity to review the documents is critical because these are almost 40 years old. And in that transition from what was almost certainly a carbon copy era to the modern electronic age, you're dealing with data entry that begs not just for Scrivener's era, but wholesale mistakes. Our sentencing brief and transcript walk through the contradictions in the record and in the criminal history that was before the district court. They're more than just the dates of conviction, but I would like to highlight those for you here. There was one administrative document, a computerized New York agency document that listed Mr. Archie as received, whatever that means, by their agency on July 11th of 1977. There was a judicial type document from the New York Supreme Court called a Certificate of Disposition. Now it was created in 2011 and mostly handwritten, but it said he was convicted on June 9th of 1977. Later on, part of the documents that were before the district court included an ATF report of investigation, which was apparently drawn from an NCIC, a federally maintained database. That gave yet another date of conviction, which was June 18th of 1978, wholly a year different than that Certificate of Disposition from the New York State Supreme Court. Always for the same offense, though, right? No, ma'am. And in the third degree robbery? Well, yes, ma'am. They always reflect third degree robbery, but these different papers also have asymmetries as to the other offenses with which he was charged, and I think those are significant as well. Because what we're seeing here is that there are definitely – this is almost an archeological effort as much as a fact-finding effort, and there are bones here of – I don't know. Some of us were practicing law there at that time, so you might not want to be quite that blunt. Well, as to Mr. Archie, Your Honor, there are bones here of prior convictions, but it's unclear which dinosaur they belonged to, and there may have been – I'm going the wrong way, Chris. Dramatic period is not There may have been more than one, and here we also would point out that there certainly is case law that allows the district court to rely upon NCIC, a FBI, federally maintained database, and law enforcement very understandably needs to rely upon that in their day-to-day work. But where it's drawn into question – What's the standard of review after Washington? We're looking at what a district court has standard of review after it's passed on these particular documents. Yes, sir. As to this aspect of our argument, just the ACC, Armed Career Criminal Act finding, we believe that's a clear error, and we believe that's present here. Because while the NCIC database has some indicia of reliability, the probation office here specifically criticized the New York State database. It hardly is on par with NCIC. A sister circuit, the D.C. Circuit, in the Price case rejected a predicate conviction with a similar non-judicial documentation system, especially where that probation office offered no indication of their reliability. Here it's even worse. They've called it disorganized, and the FERC has expressed similar pause in the Bryant case. It's our position, your honors, that these administrative documents simply don't suffice to send them to an extra five-year mandatory minimum, that 15-year mandatory minimum when they're such a mess. As I said in the district court, they certainly have a quantum of evidence that there was a prior conviction. They may even have a modicum of evidence that there was a prior conviction, but it's not a preponderance of the evidence. That lack of evidence, which is what caused the district court to have to levy an estimate of what he felt in his gut was Mr. Archie's third prior conviction. As you go through the transcript, you'll see that he said, I feel that the offense was committed in 1976 and that he pled guilty in 77, and there was a conviction in 1978. That date is hardly even a date. It's really just a year, and it's not supported by record evidence. I don't see in the record a 1978 piece of paper to support that finding, which we believe amounts to clear error. In the Thompson case... I thought the ATF report referred to 78 as the conviction date. The ATF report is depending upon some other document that's not in the record. That ATF report also, it appears to draw from NCIC, which is not in this record. That also drew another case number from NCIC, which New York State wrote back and said, you got the wrong guy. So now we have a good reason to believe NCIC here as to this defendant has problems. In the Thompson case, this court also provided that a conviction cannot be reduced to nothing more than the defendant was at some prior time convicted of some crime, and you further explain that the nucleus of the conviction also contains other operative facts such as the date of conviction. We don't have that in this ruling, and we certainly don't have record evidence to support the lower court's decision. Pinpointing an Armed Career Criminal Act predicate offense deserves more than what we have here. It deserves more evidence than what we had here, and we would ask the court to vacate that ACCA finding and allow the district court to fashion a sentence within the traditional penalty of zero to ten range for that offense. Can you help me a little bit in terms of, as you well concede that the standard is preponderance of evidence in terms of finding, and with the problems you clearly indicate, and I think well taken, with this information not being very exact in some problems, how do you deal with that weak problem, perhaps flawed evidence, against that against what? What's the evidence on the counterweight to that? That these convictions do not exist? Because we're talking about balancing, so what is it balanced with here? All of a sudden there's no duty to, you know, put things forward. Is there anything to balance that this didn't happen, these aren't correct? Well Your Honor, we believe it's the confusion in the records. Mr. Archie stipulated to the first degree. I granted the flaw in the evidence presented, but I'm still asking you about what weight do we kind of balance that with in terms of preponderance? Here, because there are no consistent dates appearing in the record, I don't think the government can possibly find a preponderance, because what you really have is two to three to four different dates that all contradict each other, and their burden is a preponderance, and they failed it as to that third predicate. So you're saying this is so factually unreliable that it doesn't constitute real evidence? Correct, Your Honor. I would suggest that remanding simply to reconsider that the things aren't in, that aren't in the record here is certainly available to you, but you can go ahead and say, given the facts here, that no one can reasonably reach a preponderance standard here, that it's clear error to do that where there's three or four inconsistent dates that none of which match each other. If I might, Your Honor, move on to respond to the government's argument as to the Elaine issue. You see, he was sentenced for brandishing, and while this case was on direct appeal, the Elaine decision came out, and Mr. Archie was not charged with brandishing. The indictment doesn't contain brandishing. The plea agreement, which goes through the elements, Siri Adam, doesn't mention brandishing as an element. And the district court here astutely even asked the prosecutor on the record in the plea hearing transcript, do you have to charge brandishing to sentence him for brandishing? And she, citing the law as it was at the time What about the appeal waiver? Why doesn't it cover this? Your Honor, our position about that is because it's beyond the scope of what he pled to. You see, he pled to the base 924C, which does not include brandishing. This court, I'm sorry, the lower court could not then, under Elaine, sentence him for the seven-year offense. He has a waiver as to what he pled to, which was base five-year in 24C, use and carry, but not as to brandishing. The scope of the waiver is informed by the count of conviction, and here that count is the base 924C. We can't have a valid Yeah, but what if the language of the waiver was so sweeping, though? That's what bothers me. It says he waives the right to further, excuse me, further to waive all rights to contest the conviction or sentence. That's pretty significant, isn't it? We believe there's ample, it certainly is, Your Honor, but we believe there's ample precedent from this court that gives us the opportunity to pursue this appeal. It comes from both Marin, as well as Attar and Broughton-Jones. In Marin, it became very clear that a defendant can't waive in a legal sentence, and no matter what that language says Right, and there is an exception for ineffective assistance to counsel prosecutorial misconduct not known to the defendant. But other than that, it's sort of the kitchen sink. I think Marin and Attar and Broughton-Jones all make very clear that regardless of the text of that waiver, the law allows you all to liberate this man from an illegal sentence. And all those cases basically stand for the principle that the sentence that was given was illegal at the time it was imposed, and that's not the case here. We have a site in our briefs, Your Honor, that explains that the District Court's obligated to apply the law at the time that it had the matter, but that once it's before you, you have the power to correct it to the law of today when there's an intervening change in law. And we believe that both in Attar, which was another Eastern District Sixth Amendment problem, as this is a different species of Sixth Amendment problem under Alain, and in Broughton-Jones, which didn't even rise to constitutional magnitude. That was simply revisiting a sentence despite an appellate waiver because of a restitution order that was illegal. Here, we've got a Sixth Amendment jury trial violation and Alain violation of much greater gravity. Your power is immense in this field to order a remand back to the District Court to revisit that sentence, that aspect of Mr. Archie's sentence. Unless there are further questions from the panel, I'd like to reserve the remainder of my time for rebuttal. All right. Thank you, Mr. Howell. Ms. Watford-McKinney. May it please the Court, I am Yvonne Watford-McKinney, appearing for the United States. And certainly, Your Honor, with respect to the issue of whether or not the government proved that third predicted conviction by preponderance of the evidence, we believe that the documents do show that the defendant was convicted of that armed robbery offense in New York, and the documents that were placed in evidence by the defendant, as a matter of fact, support that. Even without additional documents. You have, the government has not argued that the waiver avoids this issue you're addressing now. Oh, certainly, Your Honor. I'm just asking the question. I was curious why the government didn't include waiver as a bar on the second issue. Oh, no, Your Honor, not on the second issue. I don't believe that there's an instance where an exhibit has been disposed of by waiver, and I don't think our office supports that. I can't think of a single instance where we support waiver in these circumstances. I'm happy to hear that. Thank you, pardon me, Your Honor. I'm happy to hear that. Go ahead. If I can continue. Concerning these exhibits, all of these exhibits are in the defendant's name. Sherwin Archie. The exhibits, exhibit B, for instance, the certificate of disposition, although handwritten, does indicate that this defendant was charged with a number of robberies, which the PSR picked up in paragraph 16, but that he pled to robbery in the third degree. Now, it indicates in this exhibit that he was convicted and sentenced on the same day, June 1977, but I would suggest to the court that that's the Scrivener's era, and there's precedent in this court for considering such things as Scrivener errors and discrepancies, even in the name of the drug that was charged in an indictment, and indicated that those discrepancies don't upend the conviction or the predicate conviction, and that's because there are other indicia of reliability that support the probable accuracy of the other documents. Here we had an NCIC, which named the defendant, which was reviewed by the case agent, was reviewed by the court, actually brought up to the court during the sentencing hearing, and that document does indicate the defendant was convicted of the third degree robbery offense in New York, says in 1978. All of the other documents that mention the year of conviction, say 1978, only the certificate of disposition says 1977, and so I believe that to be a Scrivener's era. Concerning what we call exhibit D, which is a document from the Supreme Court of the state of New York, that document indicates that of two cases that the case agent at probation office asked for documents concerning, this office said that one of those sets of documents was not even the defendant. In other words, they double checked and they determined that in case number 3611-76, that is our defendant. That is the same case number in the PSR, it is the same case number that the agent found when he looked at the NCIC and determined the defendant was convicted of that predicate offense. This court has held many times over that computerized documents are reliable. Now, counsel has indicated that the probation office said that the New York documents were sloppy or disorganized, yet at the sentencing hearing, the probation officer stood by the accuracy of those documents. New York uses those documents all the time. In the McDowell case that this court recently decided, I believe in March of this year, McDowell case, this court acknowledged the reliability of the NCIC. And so I believe in this case, we have enough documents that support by a preponderance of evidence, this defendant's conviction of the robbery offense in New York. Judge Boyle looked at the documents, he took a brief recess to go back and look at the documents, and I quote, in more detail. And when he came back into the courtroom, he found that these documents do support the defendant's conviction by a preponderance of the evidence. So I believe that based on what the court reviewed and the documents that are in the third degree robbery, and thus he was an ACCA designated defendant by a preponderance of the evidence. Now, concerning the first issue in the defendant's brief, and that's the Alene waiver, we believe the defendant did waive his right to appeal his conviction and sentence on that 924C count. And there's no ambiguity in the language of the plea agreement. There was no ambiguity during the court's colloquy with the defendant as he arranged him on that charge. The defendant never said, I didn't understand it. He never said, I didn't understand the waiver. At no point does the record reflect that there was a misunderstanding or misapprehension about what was being waived. And he said, as Ms. Keenan pointed out, that he waived any issues that relate to the establishment of the advisory guideline range, and he waived his right to contest the conviction or sentence in any post-conviction proceeding. So we believe based on that, based on his own history, this is a man who 25 times before had pled guilty. So he's not unfamiliar with the criminal justice procedure. And there's nothing in the colloquy to show otherwise. So I would indicate to the court that he did waive, that his waiver was knowing and it was voluntary, and that the issue is within the scope of the waiver. And for those reasons, we ask the court to affirm his conviction and sentence in this case. Counsel, will you indulge me that if we disagree with you on the waiver, would you address the merits of his claim? Oh, yes. Yes, Your Honor. This court has held, and I will quote this, that although the law changed after the defendant pled guilty, his expectations as reflected in the plea agreement did not. And that's a quote from the United States versus Copeland, which is cited in the government's brief. Copeland also said that the defendant got the benefit of his bargain. He bargained for waiver, and that's what he got. Aren't you arguing waiver still? Beg your pardon? Aren't you arguing waiver? Aren't you? Yes. I said assume that we find against you on that. Address the merits of the lien claim in that situation. Well, address that argument, the merits of it, the brandishing issue. Yes, his argument is the brandishing. I want you to address that. Assume that you lose on waiver. I'm not trying to confuse you. No, no. I understand, Your Honor. But the law holds that that is a penalty provision that does not have to be charged in the indictment. That's Almendarez-Torres. And the Supreme Court's decision in the lien has done nothing to disturb that holding. And so I believe that that holding does still survive a lien. And because of that. How does it survive a lien, though, the fact that increases the mandatory minimum sentence that may be imposed, doesn't it? Well, the court is not. That is true. Yes, it does increase the mandatory minimum. It absolutely does. And it would be error, except for the waiver argument. You concede the error. I concede. Yes, I do. I concede error. Except for the waiver. Now. And I think that's why we wrote our brief that the way we did. Do we have any other? No further questions. Thank you, Your Honor. Again, I would ask the court to affirm the district court. Thank you. May it please the court. I would just like to offer a few additional points in response. I worked with Mrs. McKinney for many years as a colleague and agree with her that it is the office policy in the Eastern District not to enforce the waiver as to the ACC issue. So that here is confined to the Elaine issue. On just two or three other points, the government has argued that the NCIC was reviewed by the agent and the court in making this determination about whether or not Mr. Archie had that third conviction. They may have, but that's not in the record. And it's not here to be used in support of a finding that he had that conviction. The McDowell case did come before this panel. It came before this court twice. The first time where they reviewed the reliability of the NCIC system was an unpublished decision, but they went into great length to establish all the different points of influence and content in that federally maintained FBI-maintained database. There's no similar record here of this New York system. We can't offer that New York system, especially where this probation office has already called it on the record disorganized, the same reliability as NCIC. And two other points, while the district court did review and find that Mr. Archie had a third conviction, he couldn't give the specific date of it, and we believe that violates the Thompson decision of this circuit. Finally, I would humbly point out that if the government is arguing that Scrivner's error is to play here, Mr. Archie would suggest that to enhance someone to the mandatory minimum provisions of the Armed Career Criminal Act, it depends on more than prospective Scrivner's error to take away his liberty for all those additional years. For those reasons, Your Honors, we would ask that you vacate the sentence of the district court and remand it for re-sentence. And you have nothing else further to say about why we should not hold you to your waiver? Well, as to the waiver, Your Honor, we believe it was an illegal sentence, and that Marin and its progeny make very clear that this court cannot and should not enforce an illegal sentence where you can offer him this remedy. And this remedy is clearly called out for where the facts allow, I'm sorry, where the facts show that the government doesn't contest there's an Elaine violation here. And you're on direct appeal? We were on direct appeal when that came down, yes, sir. All right, thank you. Thank you so much. We will ask the
judges: Roger L. Gregory, G. Steven Agee, Barbara Milano Keenan